## OGLESBY COAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4422.

Circuit Court of Appeals, Seventh Circuit.
Jan. 15, 1931.

Rehearing Denied March 12, 1931.

M. F. Gallagher, E. B. Wilkinson, S. M. Rinaker, and A. R. Hall, all of Chicago, Ill., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before ALSCHULER and PAGE, Circuit Judges, and LINDLEY, District Judge.

ALSCHULER, Circuit Judge.

Petitioner assails a judgment of the Board of Tax Appeals sustaining respondent in his redetermination of a deficiency in petitioner's income and excess profits taxes for its fiscal year ending March 31, 1918. The commissioner, as well as the B. T. A., in computing the part of the tax for so much of the fiscal year as fell within the calendar year 1917, refused to allow as a deduction from gross income loss from obsolescence sustained during that part of the fiscal year falling in the calendar year 1918. The sole question is whether the applicable statute was correctly interpreted.

Title 2 of the Revenue Act of 1918 (40 Stat. 1058) deals with income taxes, and section 205(a) thereof provides:

"That if a taxpayer makes return for a fiscal year beginning in 1917 and ending in 1918, his tax under this title for the first taxable year shall be the sum of: (1) the same proportion of a tax for the entire period computed under Title I of the Revenue Act of 1916 as amended by the Revenue Act of 1917 and under Title I of the Revenue Act of 1917, which the portion of such period falling within the calendar year 1917 is of the entire period, and (2) the same proportion of a tax for the entire period computed under this title at the rates for the calendar year 1918 which the portion of such period falling within the calendar year 1918 is of the entire period. * * *"

Section 335 (a), tit. 3, of the Revenue Act of 1918 deals with war profits and excess profits taxes, and is in all essentials like section 205 (a).

Section 214 (a) of the same act, in specifying the permissible deductions from income, enumerates: "(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, *including a reasonable allowance for obsolescence.*" The Revenue Act in force in 1917 authorized no allowance for obsolescence. It was stipulated that petitioner's loss in assets from obsolescence during the first three months of 1918 was $53,122.42; and that petitioner's taxable net income for the entire fiscal year, without any deduction for obsolescence, was $55,000.37.

Petitioner contends that through the method adopted its tax for the 1917 portion of the fiscal year was computed on one net income and that for the 1918 portion upon another net income, but that the law contemplated but a single return of income—that made in 1918 for the entire fiscal year. That section 205 (a) and section 335 (a) refer only to the *rates* of taxation applicable to the several periods, and not to the net income—which, it is contended, must be the same for each of the calendar years into which the fiscal year fell.

618

The question must be answered by the proper construction to be given sections 205 (a) and 335 (a). The evident purpose of the sections was to place on a parity, as nearly as might be, the fiscal year taxpayers of 1917–1918 and the taxpayers for the calendar year 1917.

■ Petitioner has cited various sections of the revenue law to indicate that the taxpayer is required to make only one return for the year, whether fiscal or calendar. Generally speaking, this is true. But these analogies do not materially assist in determining the true intent and scope of the sections in question. What their import is must be gathered, if possible, from the words of the section and their context. The words, "computed under title 1 of the Revenue Act of 1916 as amended by the Revenue Act of 1917 and under title 1 of the Revenue Act of 1917," are not limited in their application to *rates* of taxation as specified in those acts. Title I of the 1916 Act is broadly inclusive. It not only fixes the rates of taxation, but prescribes, inter alia, the subject-matters of taxation, and the allowable exemptions, deductions, and credits. Title 1 of the Revenue Act of 1917 made radical changes in the rates prescribed in the Act of 1916, and when section 205 of the 1918 Act employed the words "*computed* under Title I," etc., without limiting their application, we see no reason for confining them to rates only.

To *compute* the tax under the law of 1917 implies that the computation be made as it would be in case the 1918 Act had not been passed. If there were exemptions or other deductions permissible under revenue laws in force in 1917, but not under a subsequent act, a computation under the law of 1917 would require them to be deducted in computing net income. If the subsequent law allowed deductions which were not allowable in 1917, a computation of the tax under the law of 1917 would not admit of their being deducted from income.

That the word "computed" as employed in this connection is general, and not restricted merely to rates, has confirmation from its use in the very next clause of the section, which deals with the tax for the 1918 portion of the fiscal year. There it is stated: "Computed under this title at the rates for the calendar year 1918." But to have omitted the words "at the rates" would scarcely have altered the sense of this clause, since the words "computed under this title" would have included the rates as well as all other provisions

of those acts which bear on the amount of the tax.

■ The regulation of the Treasury Department adopted shortly after the passage of the 1918 Act provided that so much of the tax for a fiscal year falling within these two calendar years as is attributable to the year 1917 "is found by computing the *income* of the taxpayer and the *tax* thereon in accordance with" the statutes of 1916 and 1917 then in force, and that which is attributable to 1918 in accordance with the 1918 Act (article 1622, Reg. 45); and a similar rule was made respecting computation of excess profits taxes. While this regulation is in no sense a binding construction of the sections, it is illuminating as indicating how the section was construed by the department which has the widest experience with federal taxation.

In the Revenue Act of 1924, in providing for a similar situation, the language employed was, "the same proportion of a tax for the entire period, *determined under the law applicable to the first calendar year and at the rates for such year.* * * *" Section 207 (a), 26 USCA § 938 (a). Petitioner insists that this change indicates congressional recognition that the 1918 Act was lacking in those respects wherein the 1924 Act made definite provision; while respondent maintains that the later act was but a clarification of the former and a further manifestation of its intent. We are satisfied that there is no essential difference in the effect of the two. It is evident that from the time of adoption of the 1918 Act this contention arose as to its meaning; and while the later act cannot serve to construe or broaden the first, the manifest intent of the former will not be narrowed or limited because of the clearer and more definite statement of the same intent in the later act.

Judicial decisions afford but little light on the specific question. The B. T. A., in its opinion herein, properly distinguished the case of T. B. Hord Grain Co. v. Blair, 58 App. D. C. 112, 25 F.(2d) 536, upon which petitioner places much reliance. The question there was whether a method of special assessment of corporate taxes as specified in the 1918 Act was applicable to a return for an entire fiscal year beginning in 1917 and ending in 1918. The petitioner there contended that the special assessment method should be applied only to the 1918 portion of the tax for the fiscal year. The court, as well as the B. T. A., held otherwise, as there was no provision in the 1918 Act for applying the special assessment to a part only of a

fiscal year. Oglesby Coal Co. v. Commissioner of Int. Rev., 18 B. T. A. 1245.

We are satisfied that a proper conclusion was here reached, and the judgment is affirmed.